**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **United States of America,** : | Case No. | C-3-03-241 |
| ex rel. Jeffrey Judd, : | | |
| Relator, : | District Judge Thomas M. Rose | |
| -vs- : | **Relator's Memorandum Contra Defendants'** | |
| : | **Motion to Dismiss Relator's Complaint Under** | |
| **Dennis Maloy, et al.** : | **Fed. R. Civ. P. 12** | |
| Defendants. : | | |

_____

Now Comes Relator, by and through counsel, James R. Greene, III & Associates, and hereby submits Relator's Memorandum Contra Defendants' Motion to Dismiss Relator's Complaint Under Fed. R. Civ. P. 12 for the reasons set forth in the following Memorandum in Support.

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

In accordance with 31 U.S.C. §3730(b)(2), Mr. Judd filed his qui tam complaint under seal and served a copy on the United States Department of Justice. The Department of Justice subsequently notified this Court of its decision to decline to intervene in the case at this time. Mr. Judd then proceeded with the action as the qui tam relator.

On August 6, 2004, Defendants moved to dismiss Relator's Complaint filed pursuant to the False Claims Act, 31 U.S.C. Section 3729 et seq. Relator brought said qui tam action on behalf of himself and on behalf of the United States of America against Defendants Dennis Maloy, South Community, Inc., ("SCI") South Community, Inc. Board of Trustees, and Gerre Wood. In summary, as relator for the United States, Mr. Judd seeks treble damages and civil penalties for Defendants'

actions based upon their knowingly making false statements and false claims on the United States government.  Defendants' actions consisted of failure to disclose the existence of several payers of first resort in violation of the False Claims Act and double billing the government in order to obtain payment of funds to which they otherwise would not have been entitled to.  Relator further alleges that Defendants conspired among each other for purposes of engaging in such contact.

In the Complaint, Relator asserts several claims for relief.  Specifically, Relator sets forth the following causes of action: 1) false certification of claims and/or funds for duplicate billings; 2) false billings for services of managed care and adult parole authority; 3) conspiracy to submit false claims; 4) retaliation in violation of 31 U.S.C. §3730(h); 5) violation of the Family Medical Leave Act; 6) violation of Ohio's strong public policy against discrimination and/or retaliation in the workplace; and 7) intentional infliction of emotional distress.  In their motion, and pursuant to Rule 12(b)(6), Defendants seek dismissal of all claims for relief.

Defendants contend that 1) this court lacks subject matter jurisdiction over this case; 2) Relator's Complaint fails to comply with Rule 9(b) and should therefore be dismissed with prejudice under Rule 12(b)(6); 3) Count IV of Relator's Complaint fails to state a claim upon which relief can be granted as against Defendants Maloy and Wood; and 4) Counts V, VI, and VII of Relator's Complaint fail to state claims against Defendants upon which relief can be granted in a false claims action and should be dismissed.

Relator disagrees that dismissal is warranted on any of his claims for relief for the reasons specifically addressed below.

## II.     MOTION TO DISMISS STANDARD

The standard to be applied in deciding a motion to dismiss is as follows:

> This court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  A complaint need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests."  A judge may not grant a Fed. R. Civ. P.12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations.  *Andrews vs. State of Ohio*, 104 F.3d 803, 806
> (6th Cir. 1997) citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)

2

(internal citations omitted) (emphasis in original).

A motion to dismiss may be granted under Fed. R. Civ. P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk v. City of Strongville*, 99 F.3d 194, 197 (6th Cir. 1996) citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. LAW AND ARGUMENT

#### A. This Court Has Subject Matter Jurisdiction Over This Action.

Defendants first assert that this Court lacks subject matter jurisdiction over this case because Relator's allegations cannot overcome the bar to subject matter jurisdiction set forth in Section 3730(e)(4). Plaintiff disagrees. The jurisdictional provision for qui tam actions under the False Claims Act ("FCA") states that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4)(A) (2000). "Original source" is defined in the FCA as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. §3730(e)(4)(B).

Defendants rely upon *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998) in setting forth the tripartite test to be used when determining whether a relator qualifies as an "original source" under the FCA. In applying the tripartite test, this Court must answer the following questions: 1) Were Relator's allegations "publicly disclosed" before the qui tam action was brought? 2) If so, is the qui tam action "based upon" the public disclosure? 3) If so, was Relator an "original source" of the information on which the allegations were based? See *United States v. Bank of Farmington,* 166 F.3d 853, 859 (7th Cir. 1999) (applying tripartite test).

In this action, the first question, whether the allegations made by Relator in his FCA complaint have been publicly disclosed, must be answered "no". Defendants cite *United States ex rel. McKenzie v. Bellsouth Telecommunications, Inc.,* 123 F.3d 935, 939 (6th Cir. 1997) and *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 646 (6th Cir. 2003) for the proposition that a person who bases any part of an FCA claim upon information that previously has been publicly disclosed is precluded from asserting that claim under the Act. Defendants contend that because Defendant SCI is required to submit regular and routine audits of the use of the federal funds it receives, the results of which are regularly published and made available to the public by the Federal Audit Clearinghouse and by the U.S. Office of Management and Budget ("OMB"), the information upon which Relator relies was and is in the public domain. Accordingly, Defendants maintain that Relator is thereby precluded from asserting his claim under the FCA.

Relator disputes that the information submitted to and published by the Federal Audit Clearinghouse and the OMB constitutes a "public disclosure" within the meaning of 31 U.S.C. §3730(e)(4)(A). Relator's case can easily be distinguished from the facts set forth in *McKenzie*. In *McKenzie*, the Sixth Circuit says that if there has been no public disclosure, then there is no jurisdictional bar. If, as Defendants contend, Relator's qui tam complaint is based upon publicly disclosed information, then the FCA precludes this Court from exercising jurisdiction over the allegations, unless Relator is the original source of that information. *Bledsoe*, 342 F.3d 634 citing 31 U.S.C. §3730(e)(4)(A). Relator maintains that there was no public disclosure of the allegations made in the qui tam complaint, and that even if this Court determines there was, Relator can show that he was an "original source" of said information.

In *McKenzie supra*, the Sixth Circuit determined that the relator's allegations were publicly disclosed prior to the filing of her qui tam action through two other cases that she had filed, one of which was nearly identical to large portions of the qui tam complaint. In this decision, The Sixth Circuit concluded that "public disclosure" includes documents that have been filed with a court, such as discovery documents and a plaintiff's complaint. Therefore, the Court therein determined that the allegations were publicly disclosed prior to the filing of the qui tam action. In this case,

4

Defendants do not assert, nor could they, that Relator's allegations in his qui tam complaint mirror those of any other court filing.

Likewise, using the same analysis set forth in *McKenzie*, the Sixth Circuit also determined that there had been a "public disclosure" in the *Jones* decision, as the relator therein had previously filed a complaint pursuant to Michigan's Whistleblower's Protection Act that publicly disclosed the claims raised by the relator in her qui tam complaint.

Again, in *Bledsoe*, the Sixth Circuit found that a complaint filed prior to the qui tam action constituted a "public disclosure" under the FCA because three of the paragraphs in the qui tam case directly paralleled those of the former action.  In *Bledsoe*, the Sixth Circuit stated that the prior complaint had already effectively alerted the public to the fraud occurring therein.  This is not so with regard to Relator.  First, there was no previous filing that was identical to Relator's qui tam action.  Relator's other complaint before this Court, identified as Case No. C-3-04-15, primarily seeks relief for Defendants' alleged violations of the Americans with Disabilities Act and the Family Medical Leave Act.  Although Relator references breach of trust as the purported reason for his termination at SCI, he does not make or disclose any allegations of fraud in that action.  Second, Defendants do not maintain that the allegations of Defendants' fraudulent billing practices made in the qui tam action are identified or referenced as such in SCI's audit results that are published and made available to the public by the Federal Audit Clearinghouse and by the OMB.  Thus, in the absence of Relator's qui tam action, the public has not been effectively alerted to the alleged fraud occurring by Defendants at SCI, as was the case in *Bledsoe*.

The second question under §3730(e)(4) is whether the allegations in the qui tam case were "based upon" the public disclosure, to which Relator also answers "no."  In *McKenzie*, the Sixth Circuit ruled that a relator who bases any part of his allegations on publicly disclosed information is barred from bringing a qui tam action.  *McKenzie*, 123 F.3d at 940. The court further stated that in deciding whether an action is "based upon" a public disclosure, the court should determine whether substantial identity exists between the publicly disclosed allegations or transactions and the qui tam complaint.

5

Upon concluding that Relator's allegations had been publicly disclosed prior to the qui tam action being brought, Defendants, without engaging in any analysis as to the second element of the tripartite test, simply state that the information upon which Relator's Complaint is based was and is in the public domain and available to anyone who seeks it. However, Defendants reasoning is flawed. In *McKenzie*, the Sixth Circuit stated that "based upon" means "supported by," and includes any action based even partly upon public disclosures. *McKenzie*, 123 F.3d at 940. Nowhere in Relator's qui tam complaint does he cite to, rely upon, or reference SCI's published audit results in asserting that Defendants engaged in fraudulent billing practices.

In addition, Defendants have set forth no facts that show Relator had even seen SCI's published audit results prior to filing his qui tam complaint, no less that he relied upon any such information in formulating his allegations. In fact, in paragraph fourteen of the qui tam complaint, Relator alleges that Defendant Maloy personally advised him that Defendant SCI was charging more employee time to grants and/or claims than was actually spent. Essentially, Relator's knowledge of Defendants' alleged fraudulent billing practices is independent of SCI's published audit results. Relator also became aware of the fraudulent billing practices during the course of his employment at SCI and in the performance of his duties, which included preparing budget and financial reports and budget modifications and approving expenditures. Complaint ¶11, 12.

In *Jones*, the Sixth Circuit cited *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) in analyzing whether the public disclosure consisted of the "allegations or transactions" that form the basis of the FCA complaint. That court noted in its interpretation of the FCA that there was a distinction between "allegations or transactions" and ordinary "information." *Jones* citing *Springfield,* 14 F.3d at 653. The court concluded that the jurisdictional bar applied only when the allegations of fraud or the critical elements of the fraudulent transaction were publicly disclosed and offered. *Jones* citing *Springfield*, 14 F.3d at 654. Defendants assert that SCI's audit results are routinely and regularly published as part of their requirements for receiving federal funds. By this requirement, SCI was not being targeted, investigated or exposed for engaging in the fraudulent conduct Relator alleges in the qui tam

complaint. Instead, SCI's audit results were published as ordinary information and as part of the federal government's requirements for entities receiving federal funds. Allegations of fraud do not formulate a basis for publishing SCI's audit results.

Thus, qui tam actions are barred only when enough information exists in the public domain to expose the fraudulent transaction. *Jones* citing *Springfield*, 14 F.3d at 654. Here, SCI's published audit results, standing alone, do not constitute enough information in the public domain to expose Defendants' alleged fraudulent billing practices since the allegations made by Relator in the qui tam action are not a repeat of what the public already knows. See *McKenzie* citing *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992). Defendants do not assert in their motion to dismiss that the alleged fraudulent billing practices were ever uncovered or brought to light in any audit results submitted to the Government for review and publishing.

Even assuming, arguendo, that Defendants are correct and SCI's audit results constitute a "public disclosure" under the FCA and Relator's qui tam action is "based upon" such publicly disclosed allegations, Relator maintains that he is still saved from the jurisdictional bar under the "original source" exception set forth in §3730(e)(4)(B). Thus, the final question to be decided by this Court under the tripartite test is whether Relator was an "original source" of the information on which the allegations made in the qui tam action are based. Relator says "yes." In order to maintain jurisdiction over this case, this Court must also answer in the affirmative.

Defendants contend that Relator's allegations do not support a reasonable conclusion that he qualifies as an "original source" under the FCA. Defendants further state that Relator's allegations are insufficient in showing that he has "direct and independent knowledge" as required by the Act. Because of this, Defendants conclude that Relator's allegations cannot overcome the bar to subject matter jurisdiction set forth in §3730(e)(4) and his qui tam complaint should be dismissed with prejudice. Plaintiff opposes Defendants' assertions.

Under §3730(e)(4)(B), in order to be considered an "original source" Relator must demonstrate that he (1) has "direct and independent knowledge of the information on which the allegations are based" and (2) that he has voluntarily provided the information to the Government

7

prior to filing his qui tam suit.  See also *McKenzie*, 123 F.3d at 943.  The Sixth Circuit has concluded that "information" in subsection (B) refers to the information on which the publicly disclosed allegations are based rather than the information contained in the relator's qui tam complaint.  Id.  Thus, Defendants' attack on the pleadings with regard to Relator's purported "conclusory allegations" being insufficient to suggest that Relator had "direct and independent knowledge" is without merit.

An "original source" is a relator with direct and independent knowledge of any essential element of the fraud transaction on which the publicly disclosed allegations are based.  Id. In *McKenzie*, the Sixth Circuit explained that in order for information to be "direct" it must be first-hand knowledge that is gained by the relator's own efforts.  Id at 941.  In order to be "independent," the information known by the relator cannot depend or rely on public disclosures.  Id.  There is no doubt that Relator's knowledge was "independent" of SCI's audit results as analyzed above.

With regard to "direct" knowledge as it has been defined by the Sixth Circuit, and accepting Relator's factual allegations as true as the Court is required to do when deciding a Rule 12(b)(6) motion, Relator can make this showing too.  It should be noted that in the case cited by the Sixth Circuit in *Jones*, *Springfield Term. Ry.*, 14 F.3d at 656-67, the court therein ruled that a relator does not have to have personal knowledge of all elements of a cause of action in order to qualify as an original source under the FCA.

In this case, Relator has pleaded that in the course of performing his job duties at SCI he became aware of Defendants' fraudulent billing practices.  Direct knowledge of Defendants' fraudulent billing practices is enough.  As the former Chief Operating Officer at SCI with duties that included preparing budget and financial reports and budget modifications, Relator would have direct knowledge of the true state of the facts, and thus qualify as an "original source" under the FCA.  Consistent with the reasoning set forth in *Jones*, Relator's knowledge of the facts regarding the alleged fraud is clearly the result of his employment with Defendant SCI and a result of the information Relator acquired and witnessed as a result of his position. Therefore, it is proper for this Court to conclude that Relator has not only independent, but also direct knowledge of the

8

information in question within the meaning of §3730(e)(4)(B).

The next step in the analysis for qualifying as an "original source" under the FCA calls upon this Court to decide whether Relator voluntarily provided the information to the Government before filing his qui tam suit and prior to any such information being publicly disclosed. *McKenzie*, 123 F.3d at 942 - 943. This element is not hard to meet as Relator can very easily show that he provided the information to the U.S. Justice Department for review prior to filing the within action. And, as demonstrated above, no public disclosure of fraudulent billing practices at SCI occurred as a result of publishing SCI's audit results, which, standing alone, do not indicate or expose fraudulent conduct. The audit results merely provide information.

Based on the foregoing, Relator qualifies as an "original source" of the information on which his allegations are based, and this Court subsequently has subject-matter jurisdiction over this case.

> **B. Federal Rule of Civil Procedure 9(b) Cannot Impose Requirements for Filing a Complaint under the FCA that are not Required to Establish a Violation under the Statute.**

Defendants next assert that Relator's Complaint fails to comply with Fed. R. Civ. P. 9(b) and should therefore be dismissed with prejudice under Rule 12(b)(6). Specifically, Defendants contend that the FCA is an anti-fraud statute requiring Relator to plead with particularity the circumstances (time, place and substance) surrounding Defendants' fraudulent activities. Defendants maintain that Relator's Complaint fails in this respect and Defendants cannot reasonably be expected to respond to it. In support of their position, Defendants rely primarily upon the reasoning set forth in *Bledsoe*, 342 F.3d at 641 – 43. Defendants' reasoning, however, is flawed in several respects.

Rule 9(b) requires that the circumstances of fraud be pled with enough particularity to put the party on notice as to the nature of the claim. In *Bledsoe*, the Sixth Circuit ruled that a complaint alleging violations of the FCA must comply with Rule 9(b). Id. The Sixth Circuit noted, however,

9

that the express statutory language of the FCA does not require Rule 9(b) compliance. Id. The court nonetheless inferred such compliance from the language of the FCA. Id. Even so, the court makes notable distinctions with regard to the pleading requirements for a FCA complaint as compared to a traditional fraud action brought under Rule 9(b). Id. Unlike a traditional fraud action brought pursuant to Rule 9(b), a relator alleging violations of the FCA need not state with particularity the defendant's intent to defraud. Id. The relator is only required to state with particularity the circumstances (time, place and substance) surrounding the fraudulent activity. Id. This, Relator has done.

In *Bledsoe*, the court states that the Sixth Circuit has interpreted Rule 9(b) as requiring plaintiffs to allege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. Id citing *Coffey v. Foamax L.P.*, 2 F.3d 157, 161 – 62 (6th Cir. 1993). On August 27, 2004, the United States filed an Amicus Curiae Brief in Response to Defendants Motion to Dismiss Relator's Complaint taking strong exception to the proposition that Relator is required to allege in his FCA complaint the fraudulent intent of the defendants and the injury resulting from the fraud. See Document #12. Relator hereby adopts and incorporates as if fully restated herein the arguments made by the United States in its amicus curiae brief.

With regard to fraudulent intent by the Defendants, the United States points out, and Relator agrees, that the FCA does not impose an element for intent to defraud and specific intent is not required by Rule 9(b) for a complaint brought pursuant to the FCA. The United States quotes directly from 31 U.S.C. §3729(b) that states that "no proof of specific intent to defraud is required."

Likewise, the United States further asserts that proof of injury resulting from the fraud is not a prerequisite for establishing liability against the Defendants, but is required only to recover actual damages. Accordingly, the United States concluded in its brief that Relator is not obligated

10

under Rule 9(b) to allege injury or reliance, and Relator adopts this analysis for purposes of his response to Defendants' motion to dismiss.

As previously stated, Rule 9(b) only requires Relator to state with particularity the circumstances (time, place and substance) surrounding the fraudulent activity. Id. at 642. The allegations of the FCA violations in Relator's qui tam complaint are stated with sufficient particularity with regard to the time, place and substance of the fraudulent activity alleged therein. Defendants state otherwise. Defendants maintain that Relator has not alleged specific times of any fraudulent activities on the part of Defendants; the locations of the alleged fraudulent activities; what those exact activities were and who specifically engaged in them. Relator disagrees that his qui tam complaint fails to state FCA violations with sufficient particularity.

In *Bledsoe*, the Sixth Circuit determined that the relator therein had failed to state FCA violations with sufficient particularity. This case is distinguishable from Relator's. First, the court in analyzing *Bledsoe* stated that the relator therein failed to set forth dates as to the various FCA violations or any particulars as to the incidents of improper billing the relator witnessed first-hand. Herein, Relator does set forth the appropriate dates. See Complaint at paragraphs 12, 13, 14, and 21. Moreover, Relator cites specific dates of fraudulent activity in his grievance attached as Exhibit B to the Complaint.

Although Defendants accuse Relator of making broad and conclusory allegations of fraud, Relator is very specific with regard to the time, place and substance of the fraudulent activities. In essence, Relator has provided the most specific time frame possible since the alleged fraudulent activities occurred on an ongoing basis over an extensive period of time that either cannot be pinpointed to particular or exact dates in each instance without sufficient documentation. Relator does not have in his possession any such documentation, and cannot obtain such until discovery has been authorized in this case. At this point, Relator only has his memory to rely upon.

11

Interestingly enough, despite Defendants claim that they cannot reasonably be expected to respond to the Complaint, Defendant Maloy was able to do so in great detail in his response to Relator's grievance identified as Exhibit C to the Complaint.

With regard to place, all of the alleged fraudulent activities occurred at Defendant SCI while Relator was employed there, as is evidenced by the allegations made in the Complaint. And, unlike the relator in *Bledsoe*, Relator has identified the substance or particulars as to the incidents of improper billing that occurred at SCI and makes numerous references to Defendants' specific involvement in that fraudulent scheme. Pursuant to Rule 12(b)(6), all of these allegations must be viewed in the light most favorable to Relator and must be accepted as true. *Andrews*, 104 F.3d at 806 citing *In re DeLorean Motor Co.,* 991 F.2d at 1240.

In paragraph 12 of the Complaint, Relator alleges that Defendant Maloy "was charging more than 100% of some employees' effort, including his own, to various federally funded grants/claims." In paragraph 14, Relator alleges that Defendant SCI was charging more employee time to grants and/or claims than was actually spent. In paragraph 19, Relator asserts that Defendants SCI, SCI Board of Trustees, and Maloy disregarded the contract with ADAMHS and/or ADAMHS' directives regarding billing primary payers first and instead billed MACSIS, a payer of last resort, as a primary payer. Relator alleges that Defendants had been submitting claims for payment to MACSIS since May 1999. Compl. ¶21. In paragraphs 22 and 23, Relator alleges that Defendants Maloy, SCI Board of Trustees, and/or SCI omitted facts regarding primary payers and other support while at the same time seeking payment and alleging the billings were true, complete and accurate, and the United States did fund and make payments. Relator even specifies the approximate amount of the excess funds that were awarded to Defendants based on the duplicate billing by Defendants, such amount totaling more than $40,000. Compl. ¶30.

12

In addition, Relator maintains that from 1996 through the present, Defendants Maloy and Wood harassed him and ultimately terminated his employment in retaliation for him whistle-blowing to ADAMHS corporate officials regarding Defendants' fraudulent activities.  Compl. ¶39.  Relator asserts that the harassment along with his termination was in violation of 31 U.S.C. §3730(h).

In their Rule 12(b)(6) motion, Defendants seek dismissal of Relator's Complaint with prejudice.  In its amicus curiae brief, the United States requests that if the Court dismisses this action against Defendants for failure to comply with Rule 9(b), such dismissal should be without prejudice to the United States, on whose behalf the action is being brought.  In *Bledsoe*, the Sixth Circuit cites *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) and references the court's ruling therein.  In *EEOC*, the court decided that where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.  Relator would also ask that should the Court determine that his Complaint fails to state FCA violations with sufficient particularity under Rule 9(b), the Court afford him the opportunity to comply by amending the complaint pursuant to Rule 15(a).

### C.   Count IV of Relator's Complaint Properly Sets Forth a Claim Upon Which Relief Can Be Granted Against Individual Defendants Maloy and Wood.

Defendants assert that Count IV of Relator's Complaint must be dismissed with prejudice against Defendants Maloy and Wood.  As reason for said dismissal, Defendants maintain that a retaliation claim under the FCA can only be brought against an employer, not an individual in his or her individual capacity.  Defendants cite to *Golden v. Arkansas Game & Fish Commission*, 333 F.3d 867 (8th Cir. 2003) in support their proposition.  This case can only serve as persuasive authority since, as a case decided outside of the Sixth Circuit, it does not constitute binding authority for this Court's review.  In *Golden*, the Eighth Circuit Court of Appeals ruled that a

13

retaliation claim under the FCA could only be brought against an "employer." Both the Defendants and the Eighth Circuit cite to the retaliation provision of the FCA, 31 U.S.C. §3730(h) to support their argument.

However, upon close examination of the relevant portion of the FCA, 31 U.S.C. §3730(h) does not specify whether or not a person can be individually liable for wrongdoing under any of the provisions of the Act. Specifically, 31 U.S.C. §3730(h) reads as follows:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

Although the FCA does not define the term "person," it does permit the Attorney General of the United States to bring a civil suit against "the person" who has violated §3729(a). See 31 U.S.C. §;3730(a). Accordingly, it can be inferred that it was not Congress' intent to limit any provision of the FCA by preventing suits against individual defendants, including the provision for retaliation.

### D. Relator Has Standing to Assert the Common Law Claims Alleged in the FCA Complaint.

Defendants contend that Counts V, VI and VII of Relator's Complaint fail to state claims against Defendants upon which relief can be granted in a false claims action, and such claims should therefore be dismissed. Defendants specifically state that 1) the FCA does not give Relator the right to assert common law claims. 2) Counts V, VI and VII of the FCA Complaint seek strictly private individual relief for Relator and have no connection to the interests of the United States, the False Claims Act or the underlying purposes of that Act. Relator disagrees.

14

In *Vermont Agency of National Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000), a case cited by Defendants, The Supreme Court held that " a qui tam relator under the [False Claims Act] has Article III standing." Relator is also a party in interest in this action. Where a private person initiates a FCA suit, as was done here, the statute expressly states that although the suit is "brought in the name of the Government," the action is brought "for the person and for the Government." 31 U.S.C. §3730(b)(1).

Similarly, the Supreme Court added in *Stevens* that "the FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim" and that "the statute gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." *Stevens*, 529 U.S. at 772 – 73. Relator brings this action on his own behalf and on behalf of the Government at his own expense, 31 U.S.C. §3730(f), by way of partial assignment that enables him to recover up to 30 percent of the proceeds recovered for the Government. *Stevens*, 529 U.S. at 773. Accordingly, Relator does have standing to assert Counts V, VI and VII, as they each relate to and arise out of the allegations made in the qui tam complaint.

Defendants also request pursuant to Fed. R. Evid. 201(d) that this Court take judicial notice that Relator has asserted a claim for violation of the FMLA in his other case that is pending before the Court. Defendants contend that Count V must be dismissed because Relator cannot proceed and/or recover on the same claim, based upon substantially identical facts and/or allegations.

However, Defendants are incorrect in their assumption that the FMLA claims asserted in both cases are identical. Clearly, they are not. While there may be some factual overlap between the facts alleged in the two actions, the discrimination case brought by Relator in C-3-04-015 in his individual capacity and the FCA claims brought by Relator in the within action in his capacity as a relator on behalf of the United States are not identical. First the elements of proof are different for

15

both cases. Second, the remedies sought and the measure of recovery are different for each case. In the discrimination complaint, Relator seeks damages in his personal capacity. In this qui tam action, Relator is requesting statutory penalties under the FCA. Likewise, in the qui tam case, the largest portion of any recovery goes to the Government, not to Relator.

In addition, Relator's motivation in bringing his discrimination suit is different from his motivation for bringing the qui tam action. In the discrimination case, Relator wishes to be made whole following what he alleges as an unlawful and discriminatory discharge that was personal. In contrast, in this case, Relator is suing to recover from Defendants on behalf of the Government and in the name of the Government for alleged fraud on the Government through Defendants' fraudulent billing practices.

Moreover, Count V of the FCA Complaint differs from the FMLA claim asserted in Case No. C-3-04-015 in that Count V is essentially a violation of 31 U.S.C.A. # 3729(a)(3) because Relator is alleging that Defendants Maloy and Wood conspired to defraud the Government by getting false or fraudulent claims allowed or paid. No such allegations are made regarding these Defendants in the FMLA claim set forth in C-3-04-015.

Alternatively, Defendants ask this Court to decline to exercise supplemental jurisdiction over Counts VI and VII should the Court decide dismissal on these claims is inappropriate. 28 U.S.C. §1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "In other words, If there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892 (6th Cir. 1998). Likewise, the Sixth Circuit ruled in *Ahearn v. Charter*

16

*Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996) that claims form part of the same case or controversy when they "derive from a common nucleus of operative facts."

In the case herein, Relator's Ohio common law claims against Defendants are part of the same "case or controversy" as the federal claims asserted under the FCA. The Ohio common law claims also revolve around the same fact pattern. In essence, the common law claims are intertwined with all of Relator's claims against Defendants in the FCA Complaint. Relator alleges that Defendants acted in concert in a scheme to defraud the United States by engaging in fraudulent billing practices and receiving federal funds they otherwise were not entitled to and would not have received. In *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995) the court therein stated that in order for claims to form part of the same case or controversy only a loose factual connection is necessary. Here, Relator has sufficiently made such a showing, and asks that this Court exercise supplemental jurisdiction over Counts VI and VII of the FCA Complaint.

Even if this Court were to dismiss the federal claims asserted in Relator's Complaint pursuant to Rule 12(b)(6), the Court may still exercise supplemental jurisdiction over the common law claims. In *Musson Theatrical, Inc. v. Federal Express Corporation*, 89 F.3d 1244, 1254 – 55 (6th Cir. 1996), the Sixth Circuit explained that "there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims." The district court's decision to exercise supplemental jurisdiction at that point depends on "judicial economy, convenience, fairness, and comity." Id. at 1254. Herein, with regard to the notion of judicial economy, it would not be in Relator's or the public's best interest to require Relator to make the same arguments in a state court action that he has already set forth in Counts VI and VII.

17

**IV.	CONCLUSION**

WHEREFORE, based on the foregoing, Relator respectfully requests this Court deny Defendants' Motion to Dismiss Relator's Complaint.

Respectfully Submitted,

 /s/ Valerie L. Colbert
James R. Greene, III     #0034267
Valerie L. Colbert        #0074075
James R. Greene, III & Associates
Liberty Tower, Suite 900
120 West Second Street
Dayton, Ohio 45402
(937) 225-3991
Email:  JRGATLAW@aol.com

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and accurate copy of the foregoing was filed and served upon Diane L. Gentile, counsel for Defendants, via the electronic filing system on this 30th day of August, 2004.

 /s/ Valerie L. Colbert
James R. Greene, III & Associates